ST. LOUIS TRANSIT CO. v. THOMPSON et al.

(Circuit Court of Appeals, Eighth Circuit.   April 4, 1905.)

No. 2,109.

**1. STREET RAILROADS—ACTION FOR INJURY OF PASSENGER—INSTRUCTIONS.**

In an action by a passenger against a street railroad company to recover for a personal injury, it appeared that, after stopping at the place where plaintiff intended to alight, pursuant to a signal from her companion, the car started up before she got off; that in response to a signal it again stopped, after moving about its length, with something of a jerk; that at that time plaintiff was standing on the platform or near the door, and was thrown down by the jerk and seriously injured. There was evidence tending to show that plaintiff was still in her seat when the car started after the stop, and that she moved to the door afterward, while the car was in motion. *Held*, that it was error to refuse an instruction asked by defendant that if the jury found such to be the fact, and that the car had stopped at the crossing a reasonable length of time to allow passengers to alight, and the motorman exercised proper care under the circumstances in making the second stop, plaintiff could not recover, even though there was a jerk which caused plaintiff to fall.

**2. SAME.**

Under such evidence, the jury should have been instructed that if the circumstances were such that the conductor, in the exercise of the utmost care, was authorized to call for the emergency stop, and if that stop was made with the utmost care there could be no recovery, and the failure to so instruct was error.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Joseph W. Jamison (Boyle, Priest & Lehmann and Crawley & Jamison, on the brief), for plaintiff in error.

Ford W. Thompson (Mr. W. B. Thompson, on the brief), for defendants in error.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

RINER, District Judge, delivered the opinion of the court.

This is an action brought by Frances Augusta Meeker against the St. Louis Transit Company and the United Railways Company to recover damages for personal injuries alleged to have been suffered by her while being carried as a passenger on one of the cars of the defendants by reason of the negligence of the defendants' servants in operating the car.

In the amended petition it is alleged that on the day the plaintiff received the injuries complained of the St. Louis Transit Company and the United Railways Company were operating a street railway system in the city of St. Louis, Mo., for the purpose of carrying passengers thereon as a common carrier of passengers for hire. The amended petition then proceeds as follows:

"Plaintiff for her cause of action against defendants states that upon the 31st day of March, 1903, the defendants, through their agents and servants in charge of their car, received the plaintiff as a passenger on one of their cars at or near the corner of Broadway and Locust street, in the city of St.

Louis, Mo., and for a valuable consideration, paid to defendants' servants in charge of said car, undertook and agreed with plaintiff to carry her safely as a passenger on said car to West Spring avenue, in the city of St. Louis, aforesaid, a customary stopping place for the receipt and discharge of passengers, and to there allow her to alight in safety from said car. However, plaintiff avers that defendants' servants in charge of said car, unmindful of defendants' agreements and undertaking to carry plaintiff safely and permit her to safely alight from said car at her destination, did fail in their duty to thus carry her safely and permit her to safely alight from said car, in that, when said car had stopped in response to a notice and signal given by plaintiff to defendants' servants in charge and control of said car, by pressure of the electric bell provided by defendants for the purpose of notifying their servants to stop said car, and while plaintiff was in the act of alighting from said car, and after she had arisen from her seat within said car and passed on to the rear platform of said car, and was about to leave the same, defendants' servants in charge of said car negligently caused and permitted said car to be started forward and then stopped again with a sudden jerk, thereby throwing plaintiff violently forward over the step from the rear platform into said car, whereby she sustained a great and permanent injury to her body, both external and internal, and to her nervous system; that by reason of such injury so sustained the plaintiff has suffered, and will suffer, great pain of body and mind, and has been permanently injured; and has lost, and will lose, the earnings of her labor, and has been put to great expense, and will hereafter be put to great expense for surgical and medical attention, medicines, and nursing, and will require during the remainder of her life constant nursing, aid, and attention, to her damage in the sum of thirty-five thousand dollars ($35,000.00), for which sum she prays judgment, together with the costs of suit."

The defendant the St. Louis Transit Company answered the amended petition, first, by a general denial, and, second, by averring that whatever injuries the plaintiff sustained were contributed to or caused by her own carelessness or negligence, in that she attempted to alight from the car while it was in motion. To this second defense plaintiff replied, and the case came on for trial before the court and a jury, resulting in a verdict in favor of the plaintiff for $20,000.

At the close of all of the evidence, and before the case was submitted to the jury, the defendant the United Railways Company asked, and the court gave, an instruction directing a verdict in favor of that defendant, and the court thereupon entered a judgment against the St. Louis Transit Company, and thereafter the last-named company sued out this writ of error.

After the record was filed in this court the plaintiff died, and on the 14th day of September, 1904, upon the application of W. B. and Ford W. Thompson, who were made executors of plaintiff's will, by an order entered of record the case was revived in the name of the executors.

The following facts are, we think, established by the evidence: That the plaintiff was seriously and permanently injured on the date alleged in her amended petition; that she was a woman 50 years old and a widow; that on the 31st day of March, 1903, she was acting in the capacity of general demonstrator of the Norka Food Company of Michigan; that Norka food is a breakfast food, and her business was to demonstrate its merits to the public; that on the date she received her injuries she, in company with Mr. H. P. Moyer, who was manager of the breakfast food company, board-

ed one of the cars of plaintiff in error in the city of St. Louis; that Mr. Moyer paid the fare for both; that they proceeded west on the car on which they had taken passage, over what is known as the Olive street line, to West Spring avenue, their destination; that when the car arrived at East Spring avenue it stopped, and when the car started again Mr. Moyer rang the bell as a signal to stop at West Spring; that the car came to a stop at West Spring avenue, and both Mr. Moyer and Mrs. Meeker arose and started to leave the car, he preceding her; that other passengers, the witnesses varying as to the number, got off the car, some from the rear platform and one at least from the front platform. Mr. Moyer, on cross-examination, stated that, while he had no recollection of seeing other passengers passing out of the car ahead of him to get off from the rear platform, he did see one passenger get off from the front end of the car as he (Moyer) arose from his seat, and that the conductor was watching that passenger; that before he reached the step, pursuant to a signal given by the conductor, the car started, and that Mr. Moyer then shouted to the conductor, who was in the front end of the car, "Hold on," "Wait a minute," or "Stop the car"; that the conductor, who at the time had his hand on the bell rope, tapped the bell to stop, and the car immediately came to a stop with a jerk sufficient to throw Mrs. Meeker back into the car, breaking her hip and otherwise seriously injuring her.

The conductor testified that in stopping the car he gave what is known as a "short bell" to railroad men—that is, one bell given quick—which was the same as an emergency signal; that after starting the car it did not move more than its length before it was stopped the second time. Upon cross-examination he testified that when the car started up neither Mr. Moyer nor Mrs. Meeker were standing either in the aisle or on the platform; that as soon as he touched the bell the motorman put on the power, the car commenced to move forward, and that almost simultaneously with the starting of the car Mr. Moyer and Mrs. Meeker attempted to leave the car. Another witness, Joseph Carroll, also testified that neither Mr. Moyer nor Mrs. Meeker attempted to leave the car when it first stopped at West Spring avenue. Near the close of his testimony this statement was repeated in response to the following questions asked by one of the jurors:

"Juror: Q. Do I understand the witness to say that after the car had stopped at West Spring avenue, then when the signal was given to start again that Mr. Moyer and the plaintiff were still in their seats? A. Yes, sir.

"Juror: Q. That when the call to stop the car was made, that Mr. Moyer was on the platform and the plaintiff in the car? A. Standing up in the car, near the door.

"Juror: Q. And that the car was going between the time that he got up and until he reached the platform, and nothing was said about stopping the car in the meantime? A. When he reached the platform there was a yell made to stop the car."

The motorman testified that after making the first stop at the proper place on the west side of Spring avenue, "where he made a fairly good stop for passengers to get off," that he again started the car in obedience to a signal of two bells, given by the conductor;

that the car ran about its length, probably between 30 and 40 feet, when he again stopped it upon a signal of one bell, which he testified was a little louder than the ordinary bell; and that he took it for granted that there was something wrong in stopping the car before coming to the next street. He further testified that he did not make an emergency stop, but that he stopped the car by throwing off the power and applying the brake, and that the brake used was an air brake. When asked about the jerk at the time he stopped the car the second time, he said:

"Well, it probably jerked some—a little more than if I had been letting the car coast along expecting to make a stop. When you feed the car up, and aim to stop it immediately after you throw off the current, it is very hard to make it stop without more or less jerk to a car. The electricity is in the motor, and you aim to stop so quick that you are really applying the brake against power when you do that, and it will make more or less jerk; but then the car was moving slowly, and I didn't notice any particular jerk about it myself. Of course, I am accustomed to little jerks anyway, and didn't take no notice about it being very much of a jerk, but it might have jerked a little more than the ordinary stop where the car was coasting up to a stop, and then when you apply the brake. You hardly ever make very much of a jerk stopping that way, but under these circumstances it might have jerked a little bit more. I aimed to stop the car at once. I didn't know what was the matter; didn't know whether some one was trying to get on or anything of that sort, so I probably stopped the car maybe a little bit quicker under those circumstances; we usually do in making a stop after we start; then the thing is to stop the car as quick as possible."

He further testified that, taking into consideration the size of the car, weight, load on the car, and the grade upon which the car was moving, it could not have been stopped "any smoother than it was stopped."

At the trial the defendant the St. Louis Transit Company requested the court to give the following instruction to the jury:

"(2) If the jury find and believe from the evidence that in obedience to a signal defendant's servants in charge of its car caused the same to come to a stop at or near the intersection of Olive St. and West Spring avenue, in the city of St. Louis, in order to discharge passengers, then and there desiring and offering to alight at said point, and there remained standing a sufficient length of time to afford reasonable opportunity for a woman of ordinary activity to alight from said car, and that after so waiting defendant's conductor signaled or notified the motorman in charge of said car to proceed on his journey; and if you find from the evidence that in obedience to said signal said motorman caused said car to move forward and that the speed of the same was increasing; and if you find from the evidence that at the time or after the giving of said signal for said car to go ahead, or that while said car was again moving forward, plaintiff arose from her seat and started toward the rear platform of said car, or had already stepped upon or was in the act of stepping upon the rear platform of said car when plaintiff's companion, Moyer, or some other passenger, hallooed to the conductor to stop said car, if you find they or either of them did so halloo: and if you find from the evidence that said conductor, in obedience to such command or request, signaled his motorman to stop the car, and that the motorman in obedience to said signal caused his car to stop, and that in stopping said car under said circumstances said motorman exercised that degree of care that a careful and skillful motorman would be expected to exercise under the same or similar circumstances—then plaintiff cannot recover, and your verdict will be for defendant; and this is true although you may further find from the evidence that said car was stopped suddenly and with a jerk, and that the jerking motion of said car caused plaintiff to fall."

.This request was refused by the court, and the defendant company duly excepted. We think, under the evidence, the defendant was entitled to have this instruction given to the jury. The theory of the case as embodied in this instruction is not covered in the general charge given by the court to the jury, and we think it was error to refuse this request. The car having once stopped at West Spring avenue for the purpose of discharging or taking on passengers, the stop having been properly made and in a manner not complained of, and after again starting the car, would, as the evidence shows, in the ordinary course, proceed to the next street; but instead of doing so the motorman received an emergency signal to stop the car at once, and if in obeying the signal he stopped the car, and in doing so exercised the degree of care that a careful and skillful man engaged in that business would be expected to exercise under the circumstances, the defendant company would not be liable.

We think, also, under the evidence in this case, that there should have been an instruction to the jury to the effect that if the circumstances were such that the conductor, in the exercise of the utmost care, was authorized to call for the emergency stop, and if that stop was made with the utmost care, there could be no recovery, and that a failure to so instruct the jury was error.

The other assignments of error relate to the refusal of the court to give certain other instructions requested, to the charge given by the court to the jury, and to the admission and rejection of evidence. They have all been carefully examined, but as they are without merit, it is unnecessary to discuss them.

For the errors above suggested, the judgment of the Circuit Court must be reversed, with directions to grant a new trial.